# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff,* <br> v. <br> ROBERT HUNTER BIDEN <br> *Defendant.* | Criminal Action No. 23-mj-00274-MN |

## MEMBER OF THE HOUSE OF REPRESENTATIVES COMMITTEE ON WAYS AND MEANS' *AMICUS CURIAE* BRIEF IN AID OF PLEA HEARING

**HALLORAN FARKAS + KITTILA LLP**

Theodore A. Kittila (No. 3963)
William E. Green, Jr. (No. 4864)
5801 Kennett Pike, Suite C/D
Wilmington, Delaware 19807
Phone: (302) 257-2025
Fax: (302) 257-2019
Email: tk@hfk.law / wg@hfk.law

Dated: July 25, 2023

*Counsel for Amicus Curiae the Honorable Jason Smith, Member of the U.S. House of Representatives and Chair of the U.S. House of Representatives Committee on Ways and Means*

The Honorable Jason Smith, Member of Congress and Chair of the U.S. House of Representatives Ways and Means Committee (the "Committee Member"), respectfully submits this *amicus curiae* brief in aid of the plea hearing of Robert Hunter Biden (the "Defendant") scheduled for July 26, 2023, at 10:00 a.m. before District Court Judge Maryellen Noreika.

I. **INTRODUCTION**

The Ways and Means Committee of the U.S. House of Representatives (the "Committee") is the oldest committee of the United States Congress, and is the chief tax-writing committee in the U.S. House of Representatives (the "House"). The Committee Member is the Chair of the Committee. The Committee exercises jurisdiction over revenue and related issues such as tariffs, reciprocal trade agreements, and the bonded debt of the United States. The Committee's purview includes all revenue-related aspects of the Social Security system, Medicare, social services programs, and ensuring that the tax code is enforced fairly for all Americans.

On Tuesday, June 20, 2023, the U.S. Attorney's Office for the District of Delaware announced that the Defendant had been charged with two misdemeanor tax offenses and a felony firearm offense, and that the Defendant had agreed to enter

a plea of guilty to the tax offenses (the "Plea Agreement") and enter into a pre-trial diversion agreement with regard to the firearm charge.[1]

On July 14, 2023, the Committee sent a letter to U.S. Attorney General Merrick B. Garland and U.S. Attorney for the District of Delaware, David C. Weiss, regarding whistleblower testimony provided by two Internal Revenue Service ("IRS") employees (the "Whistleblowers"), Special Agents Gary A. Shapley, Jr. and Joseph Ziegler, regarding the investigation of the Defendant. Ex. 1 (the "July 14 Letter"). The transcripts of the Whistleblowers' testimony and related documents have been made publicly available following a vote by the Committee, and are attached hereto as Exhibits 2 through 6 (the "Whistleblower Materials").[2] The July 14 Letter requested that Attorney General Garland and U.S. Attorney Weiss submit the July 14 Letter and the Whistleblower Materials to this Court. Ex. 1 at 2. To date, this has not been done. Despite the Committee's request for a response from the Attorney General and the U.S. Attorney, no response has been provided.

The Plea Agreement involves a high-profile defendant: the son of the President of the United States. Although this alone makes this matter one of

---

[1] *Tax and Firearm Charges Filed Against Robert Hunter Biden*, Jun. 20, 2023 (*available at*: https://www.justice.gov/usao-de/pr/tax-and-firearm-charges-filed-against-robert-hunter-biden) (last visited July 22, 2023).

[2] Agent Ziegler was previously identified as "Mr. X" given his desire to maintain the confidentiality of his identity. Agent Ziegler came forward publicly on July 19, 2023, as part of his public testimony before the House Oversight Committee.

important public interest, the Committee Member is concerned for much more critical reasons. Specifically, following the testimony of the Whistleblowers before the Committee, the Committee Member has been made aware that the Defendant appears to have benefited from political interference which calls into question the propriety of the investigation of the U.S. Attorney's Office. The Committee Member, as *amicus curiae*, maintains that, in the interest of full transparency and fairness for all citizens, it is critical for the Court to have this relevant information when evaluating the Plea Agreement.

## II.     ARGUMENT

### a. The Court Should Consider the Whistleblower Materials in Accepting or Rejecting the Plea Agreement.

Rule 11 of the Federal Rules of Criminal Procedure ("Rule 11") governs the consideration and acceptance or rejection of guilty pleas by criminal defendants. To accept a plea of guilty, a court must inform the defendant of, and confirm that the defendant understands, various rights afforded to the defendant; ensure that the plea is voluntary and did not result from force threats, or promises (other than promises in a plea agreement); and determine that there is a factual basis for the plea. Fed. R. Crim. P. 11(a)-(b). In accepting or rejecting a plea agreement that includes a provision that the government will not bring, or will move to dismiss, certain charges, or includes an agreement that a specific sentence or sentencing range is

3

appropriate, a court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report. Fed. R. Crim. P. 11(c).

During a plea hearing, the Court engages in a colloquy with both the defendant and the prosecution in making a determination whether it will accept the plea. The typically comprehensive nature of this colloquy requires the candor of the prosecution in informing the Court of the basis on which the plea agreement is offered and the factual basis underlying the plea. Here, however, the Committee Member has been made aware of the Whistleblowers' belief that various improprieties concerning the investigation occurred.

Specifically, on or about April 19, 2023, it was made public that there was a whistleblower who wanted to speak to Congress regarding the investigation of the Defendant. Thereafter, on May 26, 2023, Gary A. Shapley, Jr. (known as Whistleblower 1), a Supervisory Special Agent with IRS-Criminal Investigation, gave a full day of closed-door testimony to the Committee. Agent Shapley produced documents, and provided a subsequent affidavit to the Committee. On June 1, 2023, Joseph Ziegler, a Special Agent with IRS-Criminal Investigation (known as Whistleblower 2), gave a full day of closed-door testimony to the Committee.

The testimony given by the Whistleblowers gave a grim view of the investigation in this case. Agent Shapley testified:

> I am blowing the whistle because the Delaware U.S. Attorney's Office, Department of Justice Tax, and

4

>Department of Justice provided preferential treatment and unchecked conflicts of interest in an important and high-profile investigation of the President's son, Hunter Biden.

Ex. 2 at 10. Agent Shapley further testified:

> In this country, we believe in the rule of law, and that applies to everyone. There is not a two-track justice system depending on who you are and who you're connected to.
>
> But the criminal tax investigation of Hunter Biden, led by the United States Attorney's Office for the District of Delaware, has been handled differently than any investigation I've ever been a part of for the past 14 years of my IRS service.
>
> Some of the decisions seem to be influenced by politics. But whatever the motivations, at every stage decisions were made that had the effect of benefiting the subject of the investigation. These decisions included slow-walking investigative steps, not allowing enforcement actions to be executed, limiting investigators' line of questioning for witnesses, misleading investigators on charging authority, delaying any and all actions months before elections to ensure the investigation did not go overt well before policy memorandum mandated the pause. These are just only a few examples.

*Id.* at 11-12.

Agent Ziegler's testimony was equally damning. *See* Ex. 4 at 159 (identifying multiple areas of problems, including "lack of transparency, outside the normal course of an investigation, recurring unjustified delays," "misrepresentations of investigator's requested actions," and other issues). Ziegler testified:

> I have reason to believe that there was gross mismanagement present throughout this investigation, that

5

> there was gross waste of funds relating to the tax dollars spent on investigating this case, and that there was an abuse of authority by DOJ Tax and the Delaware U.S. Attorney's Office.

*Id.* at 15.

Following the testimony before the Committee, a whirlwind of events took place: On Tuesday, June 20, 2023, the charges against the Defendant in this case were announced, and the existence—but not the content—of the Plea Agreement became public. On Wednesday, June 21, 2023, an initial appearance hearing was scheduled (D.I. 3). On Thursday, June 22, 2023, the Committee voted to make public and submit the Whistleblower's testimony to the full House of Representatives.

Given the abruptness of the announcement of the Plea Agreement shortly after Whistleblowers' testimony before Congress, and in light of the seriousness of the Whistleblower' allegations, it is critical that the Court consider the Whistleblower Materials before determining whether to accept the Plea Agreement.

### b. The Specific Concerns Raised by the Whistleblowers Call Into Question the Investigation and Prosecution of this Case.

The Whistleblower Materials detail serious concerns about the handling of the investigation and prosecution of this case, leading to additional Congressional inquiries into the Whistleblowers' allegations. The testimony of Agent Shapley and Ziegler identified specific areas of concerns, including: (1) whether the statute of limitations on key claims was intentionally allowed to expire; (2) whether various

key officials interfered in the investigation, leading to the potential loss of evidence and testimony; and (3) whether the scope of prosecutorial authority was misrepresented to members of the investigative team, Congress, and the public at large.

According to the Whistleblowers, the IRS recommended criminal charges be sought for tax years 2014 through 2019, including multiple felony counts. Ex. 2 at 24-25; Ex. 4 at 33-34. The Whistleblowers allege that prosecutors and Department of Justice officials caused unjustified delays and political interference that resulted, in part, in the statute of limitations expiring for charges related to tax years 2014 and 2015. *E.g.*, Ex. 2 at 25-26, 28, 52-55; Ex. 4 at 65-66; 68. Agent Shapley specifically noted with respect to the running of the statutes of limitations, "It was a conscious decision by DOJ [Department of Justice] to let that run. They could've had them [Defendant's counsel] extend '14 and '15, but they said no." Ex. 2 at 55. When questioned whether it was typical for IRS and prosecutors to allow the statute of limitations to run out, Agent Shapley stated, "Letting a statute of limitations expire in an active criminal investigation is not normal." *Id.* at 92.

With respect to the allegations of interference, the Whistleblowers allege that Assistant U.S. Attorneys for the District of Delaware hampered the investigation tipping off the Defendant about aspects of the investigation (Ex. 4 at 26-29, 120), by prohibiting interviews of certain witnesses (Ex. 4 at 32, 52), and creating an

atmosphere where investigative activities were held up by unnecessary approvals and constant slow-walking. (Ex. 4 at 29; Ex. 2 at 22). Concerning the alleged tip-offs, Agent Shapley noted a number of particularly troubling issues, one of which included a storage unit containing Defendants' documents. After Assistant U.S. Attorney Lesley Wolf was advised of the existence of the storage unit and a search warrant had been obtained, "AUSA Wolf and the prosecutors wouldn't allow us to do it …." Ex. 2 at 115. Agent Shapley then went to U.S. Attorney Weiss, and made the case to execute the warrant. *Id.* After he received approval, an hour later, Agent Shapley discovered that "AUSA Wolf and the other prosecutors told defense counsel about the storage unit. So it was off the table." *Id.*

When asked whether it was typical for prosecutors to notify defense counsel before executing a search warrant, Agent Shapley testified as follows, "No. No, that wouldn't happen." In addition to other concerns regarding the appropriateness of the tip off, Agent Shapley noted, "You know, there's destruction of evidence." *Id.* at 116. When Agent Ziegler was asked about this incident, he agreed that tipping off opposing counsel "totally blew the plan." Ex. 4 at 120; *see also id.* (noting that contacting Defendant's counsel ahead of the search "does look like favoritism").

Agent Shapley further described in his testimony that during his efforts to interview Defendant and his associates in December 2020, various FBI personnel

8

notified members of the Biden transition team, derailing the efforts to conduct the interviews:

> Q. Can I just stop you there? Why did they tell the political officials?
>
> A. I have no – I have no idea, no idea.
>
> Q. That certainly sounds strange to you, correct?
>
> A. All of it is strange.
>
> Q It's one thing to tell the subject, but to tell the political officials introduces a whole range of topics of concern. Isn't that correct?
>
> A. Yeah. All of it – yes. Yes to your answer, but all of it was incredible.

Ex. 2 at 118. Of particular concern to Agent Shapley was the risk that witnesses would be tampered with by virtue of the contacting of political officials: "Now you're telling the witnesses that agents might be knocking on your door tomorrow, don't say anything. And ultimately, we got one guy that talked." *Id.*

Next, concerning the allegations regarding the misrepresentation of U.S. Attorney Weiss' authority and discretion to prosecute Defendant, on April 25, 2022, Attorney General Garland testified to Congress that U.S. Attorney Weiss was "in charge of th[e] investigation. There will not be interference of any political or improper kind." Ex. 2 at 25. However, in an October 7, 2022, meeting that U.S. Attorney Weiss had with Agent Shapley and others, Mr. Weiss stated, "I'm not the deciding official on whether charges are filed." *Id.* at 28. Agent Shapley further testified, "To add to the surprise, U.S. Attorney Weiss stated that he subsequently

asked for special counsel authority from Main DOJ at that time and was denied that authority." *Id.* at 28.

These represent only some of the allegations presented to the Committee by the Whistleblowers, as they also provided numerous examples of unprecedented and unusual interference, delays, and roadblocks beyond what is described above, which appear to have hindered the investigation. The Committee in its letter to Attorney General Garland and U.S. Attorney Weiss asked that this be submitted to the Court. *See* <u>Ex. 1</u> at 2. This information was not forwarded.

c. **<u>Courts Have Discretion to Accept or Reject Plea Agreements.</u>**

Courts may reject plea agreements and there is precedent for them to do so for a variety of reasons.[3] Legal experts have described situations where judges rejected

---

[3] *See e.g.*, Jonathan Allen, *In rare move, U.S. judge rejects plea agreement by Ahmaud Arbery's murderers*, REUTERS (Jan. 31, 2022), https://www.reuters.com/world/us/us-prosecutors-reach-hate-crime-plea-deals-ahmaud-arbery-murder-court-filings-2022-01-31/ (reporting on *U.S. v. Travis McMichael*, Change of Plea/Entry of Plea Minutes, Jan. 31, 2022, Case No. 2:21-cr-00022-LGW-BWC, D.I. 154 (S.D. Ga. 2022)); Celine Castronuovo, *Judge rejects plea deal with man described as world's largest child porn purveyor*, THE HILL (May 12, 2021), https://thehill.com/regulation/court-battles/553183-judge-rejects-plea-deal-with-man-described-as-worlds-largest-child/ (reporting on rejection of a plea deal because the judge was inclined to give the defendant a longer sentence in *U.S. v. Eric Eoin Marques*, Transcript of Proceedings – Sentencing Hearing Before The Hon. Theodore D., May 12, 2021, Case No. 8:19-cr-00200-TDC, D.I. 93 (D. Md. 2021)); Kristen Weaver, *Judge Rejects Tulsa Murder Suspect's Plea Deal, Orders Him To Stand Trial*, NEWS ON 6 (July 14, 2021), https://www.newson6.com/story/60ef9b140a26b00c04ee6447/judge-rejects-tulsa-murder-suspects-plea-deal-orders-him-to-stand-trial- (reporting on *U.S. v. Sago*,

10

plea agreements "if judges believe the agreements do not adequately address the nature of the crimes, the rights of victims, or the interests of the public" or when judges "disagree with prosecutors' proposed sentence in order to avoid any surprises at the later sentencing hearing."[4] For example, judges have rejected plea agreements because the plea agreement is "flawed" and they "don't agree with the outcome;"[5] the judge finds "the sentencing options available strikingly deficient;"[6] the plea agreement "falls short given the backdrop of the parties' motivation, [the individual's] trusted employment position, and the threats to national and global

---

Minute Sheet – Sentencing, July, 13, 2021, Case No. 4:20-cr-00094-GKF, D.I. 45 (N.D. Okla. 2021)).

[4] Jonathan Allen, *In rare move, U.S. judge rejects plea agreement by Ahmaud Arbery's murderers*, REUTERS (Jan. 31, 2022), https://www.reuters.com/world/us/us-prosecutors-reach-hate-crime-plea-deals-ahmaud-arbery-murder-court-filings-2022-01-31/.

[5] *U.S. v. Eric Eoin Marques*, Transcript of Proceedings – Sentencing Hearing Before The Hon. Theodore D., May 12, 2021, Case No. 8:19-cr-00200-TDC, D.I. 93 (D. Md. 2021).

[6] *Judge rejects plea deal in submarine secrets case, saying sentences were too light*, NPR (Aug. 17, 2022), https://www.npr.org/2022/08/17/1117837082/judge-rejects-plea-deal-in-submarine-secrets-case-saying-sentences-were-too-ligh; *see also U.S. v. Jonathan Toebbe and Diana Toebbe*, Order Rejecting Plea Agreements, Permitting Defendants to Withdraw Guilty Pleas and Setting Trial Dates 2, Aug. 18, 2022, Case No. 3:21-cr-00049-GMG-RWT, D.I. 113 (N.D. W.Va. 2022) (rejecting a plea deal and noting "that while she generally honors plea agreements, in this case she said the sentencing options were 'strikingly deficient' considering the seriousness of the charges.").

security…that [the parties'] actions caused;"[7] and "[i]t was not in the best interest of the community, or the country, to accept the[] plea agreements."[8]

The Court need not intrude on prosecutorial discretion. The situation here is not that the Justice Department exercised charging or plea negotiation discretion, but the presence of credible allegations that the investigation, charging decisions, and plea negotiations were tainted by improper conduct at various levels of the government.

While the Court can take into account any information during the sentencing stages (*see* 18 U.S.C. § 3661 providing, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence"), the Committee Member believes that, in the exercise of the Committee's duties to ensure that the tax code is enforced fairly for all Americans, the Court should not be kept in the dark concerning what is happening in the legislative branch. While Congress would have expected that such information would be provided to the Court, the Committee Member deemed it necessary to submit this *amicus*.

---

[7] *U.S. v. Jonathan Toebbe and Diana Toebbe*, Order Rejecting Plea Agreements, Permitting Defendants to Withdraw Guilty Pleas and Setting Trial Dates 2, Aug. 18, 2022, Case No. 3:21-cr-00049-GMG-RWT, D.I. 113 (N.D.W. Va. 2022).
[8] *Id.*

# CONCLUSION

The Committee Member respectfully requests that the Court consider the information provided above and the facts contained in the Whistleblower materials in connection with the plea hearing scheduled for July 26, 2023.

Dated:  July 25, 2023                            **HALLORAN FARKAS + KITTILA LLP**

*/s/ Theodore A. Kittila*
Theodore A. Kittila (No. 3963)
William E. Green, Jr. (No. 4864)
5801 Kennett Pike, Suite C/D
Wilmington, Delaware  19807
Phone:  (302) 257-2025
Fax:  (302) 257-2019
Email:  tk@hfk.law / wg@hfk.law

*Counsel for Amicus Curiae the Honorable Jason Smith, Member of the U.S. House of Representatives and Chair of the U.S. House of Representatives Committee on Ways and Means*

## CERTIFICATION OF COMPLIANCE

This brief was prepared in Times New Roman 14-point typeface and contains 2,896 words exclusive of the cover page, tables, and signature block, as calculated by Microsoft Word's word count function, in compliance the typeface and word-count requirements set forth in Rule 7.1.3(4) of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware.

Date: July 25, 2023　　　　　　　　　　*/s/ Theodore A. Kittila*
　　　　　　　　　　　　　　　　　　　Theodore A. Kittila (No. 3963)