**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| _____ | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case Nos. 1:23-cr-00061 (MN) |
| | ) | 1:23-mj-274 (MN) |
| | ) | |
| ROBERT HUNTER BIDEN | ) | |
| | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

## DECLARATION OF JULIANNE E. MURRAY IN SUPPORT OF MOTION OF THE HERITAGE FOUNDATION AND MIKE HOWELL FOR LEAVE TO INTERVENE

1.      My name is Julianne E. Murray.  I am Counsel to The Heritage Foundation and Mike Howell ("Movants") and I am a Delaware attorney in good standing with this Court.

2.      I make this declaration to provide the Court with additional information relevant to Movants' Motion for Leave to Intervene.

3.      Attached hereto as Exhibit 1 is a true and correct copy of email correspondence between Counsel for Robert Hunter Biden and the undersigned counsel through 8:19 PM, Friday, July 28, 2023.

4.      Attached hereto as Exhibit 2 is a true and correct copy of email correspondence from counsel for Robert Hunter Biden to the undersigned counsel dated July 31, 2023.

5.      Attached hereto Exhibit 3 is a true and correct copy of a letter from Abbe David Lowell to the Hon. Jason Smith (June 30, 2023).

I declare under the penalty of perjury that the foregoing is true and correct.

August 1, 2023

Julianne E. Murray
Bar ID 5649

# EXHIBIT 1

**From:** Julie Murray
**Sent:** Friday, July 28, 2023 8:19 PM
**To:** Richie Jones <rjones@bergerharris.com>
**Cc:** matthew.salerno@lw.com; Timothy.McCarten@lw.com; Brian.McManus@lw.com; clark@csvllp.com; Marsha De Freitas <mdefreitas@bergerharris.com>; Peter McGivney <pmcgivney@bergerharris.com>
**Subject:** RE: USA v. Biden Amicus Copies Attached

Hi Richie,

I note that ECF is down this weekend.

If you should make any filings by alternative means, please make sure to copy me of any submissions.

Best,

Julie

Julianne E. Murray, Esq.
Law Offices of Murray, Phillips & Gay
215 E. Market Street
P.O. Box 561
Georgetown, DE 19947
(302) 855-9300 – phone
(302) 855-9330 – fax
www.murrayphillipslaw.com


CONFIDENTIALITY NOTICE:  The information in this communication and any attachments is intended only for the use of the addressee and may contain information that is privileged, business sensitive, strictly private, confidential, or exempt from disclosure.  If the reader of this notice is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender and delete the communication without retaining any copies.  Thank you.  No attorney-client or work product privilege is waived by the transmission of this communication.


**From:** Julie Murray
**Sent:** Friday, July 28, 2023 4:59 PM
**To:** Richie Jones <rjones@bergerharris.com>
**Cc:** matthew.salerno@lw.com; Timothy.McCarten@lw.com; Brian.McManus@lw.com; clark@csvllp.com;

Marsha De Freitas <mdefreitas@bergerharris.com>; Peter McGivney <pmcgivney@bergerharris.com>
**Subject:** RE: USA v. Biden Amicus Copies Attached

Richie:

   With all due respect, your position on this matter is absurd and frivolous.

   You seek to seal:  (1) two IRS whistleblower transcripts officially *publicly released June 22, 2023—over a month ago—*after a formal vote of the House Ways and Means Committee (https://waysandmeans.house.gov/event/meeting-on-documents-protected-under-internal-revenue-code-section-6103/); (2) a *public* letter from House Ways and Means Committee Chairman Smith dated July 14, 2023 (https://waysandmeans.house.gov/smith-calls-on-ag-garland-and-u-s-attorney-weiss-to-submit-irs-whistleblower-testimony-into-hunter-biden-plea-agreement-proceedings/); (3) a CQ transcript of a *public hearing* held on July 19, 2023 before the House Committee on Oversight and Accountability (we note the hearing is available in full video on the Committee's webpage (https://oversight.house.gov/hearing/hearing-with-irs-whistleblowers-about-the-biden-criminal-investigation/); and (4) portions of our filings that discussed the same.

   To support your basis for sealing, you assert that somehow Fed. R. Crim. Proc. 6(e) ("6(e)") is implicated and that 26 U.S.C. § 6103's ("6103") confidentiality provisions are implicated.

   You also seek to seal a filing by a party that operates a news organization, *The Daily Signal*, and another who filed in his capacity as a reporter for that organization.  *See* Proposed Amici Brief at 1.  Thus, you seek to muzzle the press from engaging in core First Amendment activities.

   That position is frivolous, and it appears that it may be undertaken for improper purposes such as intimidating Internal Revenue Service ("IRS") Whistleblowers or seeking to attack IRS Whistleblowers Shapley and Ziegler in a collateral proceeding for putative criminal conduct. Indeed, the only logical basis for we can discern to seek to seal *public disclosures* by Congress and a *public hearing* is to seek to litigate the Whistleblowers conduct in *this Court.*  But business before Congress and what Congress discloses in its official proceedings is not litigated in this Court, but in Congress, where your client did not act until *after the fact*.

*First*.  You are woefully late in bringing this motion.  We filed on July 25, 2023.  If you thought the materials so sensitive, you should not have delayed.

1.     The House Ways & Means Committee mark-up to release the transcripts was *publicly noticed* as required, but your client and his counsel did *nothing* to intervene before the House until after the fact on June 30, 2023.

2.     Indeed, any number of parties could have publicly used these materials; my clients have filed the same materials on June 26th and June 29, 2023 in the United States District Court for the District of Columbia. *See Heritage Found. & Mike Howell v. DOJ*, 23-cv-1854 (DLF).  The government raised no objection.

3.     Hunter Biden has a number of lawyers working on this matter at multiple firms including not only your firm, but Winston & Strawn and Latham & Watkins.

*Second*.  You provide *no* specifics as to what material is subject to 6(e) which, as you know, is carefully and narrowly defined.  The Committee and the WBs were scrupulous to ensure all matters were handled appropriately and lawfully.  You cannot simply throw around accusations of misconduct with *zero support*.  Please identify with specificity—by page and line number—the exact material that you contend is subject to 6(e).

*Third*.  Any information covered by Section 6103 was released pursuant to an express vote and authorization of the House Ways and Means Committee. That authorization is publicly available on the Committee's website.  ([http://waysandmeans.house.gov/wp-content/uploads/2023/06/COMPILED_Votes-06.22.pdf](http://waysandmeans.house.gov/wp-content/uploads/2023/06/COMPILED_Votes-06.22.pdf)).  You cannot seal information lawfully released by the House to the public regardless of its previously confidential character.

*Fourth*.  The Court cannot provide you with the remedy you seek. You are complaining about material that is *currently available* to the world on the U.S. House of Representative's website—and has been available for over a month.  The Court cannot order the House of Representatives to remove that material, nor can the Court order the unknown millions of people who have already downloaded that information to forget what they have seen.  Any order sealing the same publicly available information in my client's filings would be utterly pointless—but would trample my

client's core First Amendment rights.

Please attach a full and complete copy of this communication to any filing you do make.  And please know if you file, I will advise my clients of all available remedies and will not hesitate in seeking those remedies.

Best regards,

Julie

---

**From:** Richie Jones <rjones@bergerharris.com>
**Sent:** Friday, July 28, 2023 2:13 PM
**To:** Julie Murray <julie@murrayphillipslaw.com>
**Cc:** matthew.salerno@lw.com; Timothy.McCarten@lw.com; Brian.McManus@lw.com; clark@csvllp.com; Marsha De Freitas <mdefreitas@bergerharris.com>; Peter McGivney <pmcgivney@bergerharris.com>
**Subject:** RE: USA v. Biden Amicus Copies Attached

Dear Julie:

I'm sorry that we did not have a chance to meet in person on Wednesday.  It was a bit hectic.

As you may be aware, Defendant has filed a preliminary Motion to Seal certain exhibits appended to the proposed *amici* of the Honorable Jason Smith, Chairman of U.S. House of Representatives Ways and Means Committee in the parallel case docket *United States v. Biden*, 1:23-mj-00274-UNAA (D. Del.) (the "Sealing Motion").  That motion is attached for reference, and the Court has invited further briefing from the government and counsel.

Upon review, at least some of the exhibits included with your proposed *amici* submission, as well as portions of the brief itself, present the same issues and concerns that we identified in the Sealing Motion.  Specifically, your proposed *amicus* submission appears to contain information that is legally protected from disclosure or dissemination, including under Fed. R. Crim. P. 6(e), and thus should not be reflected on a public docket.  The documents that contain such information—and thus should be filed under seal—include: portions of your *amicus* brief (portions of pages 6–13); Exhibit 5; Exhibit 6; Exhibit 7; and Exhibit 21.  These materials are located within three docket entries, 13-2, 13-3, and 13-4.  We therefore believe these materials should be sealed pending a resolution of the Sealing Motion.

Will your client consent to a request that the Court place those three docket entries under seal?  Alternatively, Defendant intends to move the Court for that relief.

We would appreciate you advising us of your client's position on this issue by 5 pm so that we may take appropriate action.  If we do not hear from you by then, we will operate under the assumption that your client would not consent.

Best,

Richie Jones



**Richard I.G. Jones, Jr.**
Partner

**BERGER//HARRIS LLP**
302.476.8430 direct
rjones@bergerharris.com

**From:** Julie Murray <julie@murrayphillipslaw.com>
**Sent:** Tuesday, July 25, 2023 4:11 PM
**To:** Richie Jones <rjones@bergerharris.com>
**Subject:** RE: USA v. Biden Amicus Copies Attached

EXTERNAL EMAIL

Sorry for the delay...

**From:** Julie Murray
**Sent:** Tuesday, July 25, 2023 12:15 PM
**To:** Richie Jones <rjones@bergerharris.com>
**Subject:** Re: USA v. Biden Amicus

Hey Richie,

I'm out of the office at the moment at an appointment. I tried to pull the documents down from the docket, but a couple of the documents are large and it's not working.

When I get back to the office in a couple of hours, I will send.

Thanks,

Julie

Sent from my iPhone

> On Jul 25, 2023, at 11:31 AM, Richie Jones <rjones@bergerharris.com> wrote:
>
> The letter, motion and accompanying brief please.  We are checking to see why my office did not receive service in the meantime.
>
> Thanks,
>
> Richie

<image001.png>    **Richard I.G. Jones, Jr.**
Partner
**BERGER//HARRIS LLP**
302.476.8430 direct
rjones@bergerharris.com

**From:** Julie Murray <julie@murrayphillipslaw.com>
**Sent:** Tuesday, July 25, 2023 11:15 AM
**To:** Richie Jones <rjones@bergerharris.com>
**Cc:** benjamin.wallace2@usdoj.gov; derek.hines@usdoj.gov; leo.wise@usdoj.gov;
clark@csvllp.com; brian.mcmanus@lw.com; matthew.salerno@lw.com;
timothy.mccarten@lw.com; Marsha De Freitas <mdefreitas@bergerharris.com>
**Subject:** RE: USA v. Biden Amicus

EXTERNAL EMAIL

Good Morning Richie,

Hmm.  I called the Clerk's office and they said all parties were noticed.  I apologize.  Do you just need the letter or do you need the letter, motion and accompanying brief?

Thanks!

Julie

**From:** Richie Jones <rjones@bergerharris.com>
**Sent:** Tuesday, July 25, 2023 10:37 AM
**To:** Julie Murray <julie@murrayphillipslaw.com>
**Cc:** benjamin.wallace2@usdoj.gov; derek.hines@usdoj.gov; leo.wise@usdoj.gov;
clark@csvllp.com; brian.mcmanus@lw.com; matthew.salerno@lw.com;
timothy.mccarten@lw.com; Marsha De Freitas <mdefreitas@bergerharris.com>
**Subject:** RE: USA v. Biden Amicus

Julie:

We were just informed that you filed a letter in USA v. Biden, Case No. 23-cr-00061-MN.  We did not receive electronic service.  Would you please send me an electronic copy of whatever you filed?

Thanks,

Richie Jones

<image001.png>    **Richard I.G. Jones, Jr.**
Partner
**BERGER//HARRIS LLP**
302.476.8430 direct
rjones@bergerharris.com

**From:** Julie Murray <julie@murrayphillipslaw.com>
**Sent:** Saturday, July 22, 2023 9:09 PM
**To:** benjamin.wallace2@usdoj.gov; derek.hines@usdoj.gov; leo.wise@usdoj.gov;
clark@csvllp.com; Richie Jones <rjones@bergerharris.com>; brian.mcmanus@lw.com;
matthew.salerno@lw.com; timothy.mccarten@lw.com
**Subject:** USA v. Biden Amicus

EXTERNAL EMAIL

Good Evening Gentlemen:

I have been retained by the Heritage Foundation and Mike Howell to seek leave to file an
Amicus Brief in opposition of the Court accepting the plea agreement at this time in USA v.
Biden, Case No. 23-cr-00061-MN.

As you know, I must ask the position of all counsel and include that position in my Motion
seeking leave.

Accordingly, I ask that you respond by noon on Monday, July 24, 2023.

Best regards,


Julianne E. Murray, Esq.
Law Offices of Murray, Phillips & Gay
215 E. Market Street
P.O. Box 561
Georgetown, DE 19947
(302) 855-9300 – phone
(302) 855-9330 – fax
www.murrayphillipslaw.com


CONFIDENTIALITY NOTICE:  The information in this communication and any attachments is
intended only for the use of the addressee and may contain information that is privileged,
business sensitive, strictly private, confidential, or exempt from disclosure.  If the reader of this
notice is not the intended recipient, you are hereby notified that any dissemination,
distribution, or copying of this communication is strictly prohibited.  If you have received this
communication in error, please notify the sender and delete the communication without
retaining any copies.  Thank you.  No attorney-client or work product privilege is waived by the
transmission of this communication.

# EXHIBIT 2

**From:** Richie Jones <rjones@bergerharris.com>
**Date:** July 31, 2023 at 10:59:35 AM EDT
**To:** Julie Murray <julie@murrayphillipslaw.com>
**Cc:** matthew.salerno@lw.com, timothy.mccarten@lw.com, brian.mcmanus@lw.com, clark@csvllp.com,
Marsha De Freitas <mdefreitas@bergerharris.com>, Peter McGivney <pmcgivney@bergerharris.com>
**Subject: RE: USA v. Biden Amicus Copies Attached**


Julie,

We disagree with the baseless assertions below, many of which are counterfactual and/or
lacking a basis in law.  Nevertheless, as this identical issue is currently before the Court, we will
await the Court's ruling on the pending application and pursue further relief accordingly.

Best,

Richie



**Richard I.G. Jones, Jr.**
Partner
**BERGER HARRIS LLP**
302.476.8430 direct
rjones@bergerharris.com


**From:** Richie Jones
**Sent:** Friday, July 28, 2023 2:13 PM
**To:** Julie Murray <julie@murrayphillipslaw.com>
**Cc:** matthew.salerno@lw.com; Timothy.McCarten@lw.com; Brian.McManus@lw.com;
clark@csvllp.com; Marsha De Freitas <mdefreitas@bergerharris.com>; Peter McGivney
<pmcgivney@bergerharris.com>

Page 1 of 5

# EXHIBIT 3



WINSTON
& STRAWN
LLP

NORTH AMERICA   SOUTH AMERICA   EUROPE   ASIA

1901 L Street, NW
Washington, DC 20036
T +1 (202) 282-5000
F +1 (202) 282-5100

**ABBE DAVID LOWELL**
Partner
(202) 282-5000

June 30, 2023

**VIA ELECTRONIC MAIL**

Representative Jason Smith
Chairman
Committee on Ways and Means
U.S. House of Representatives
1139 Longworth HOB
Washington, D.C. 20515

Re:    **Ways & Means June 22 Release of Transcripts and Proposed Actions**

Dear Chairman Smith:

Since taking the majority in 2023, various leaders of the House and its committees have discarded the established protocols of Congress, rules of conduct, and even the law in what can only be called an obsession with attacking the Biden family.  Your recent actions and joint statement with Chairmen Comer and Jordan make clear that you have joined this ignoble group, adopting their irresponsible tactics as your own.  In fact, yesterday's press release by the three of you seeking the testimony of a dozen law enforcement personnel based on the unsworn and slanted statements of the IRS agents is now the proverbial card castle—something that looks real but has no foundation.

Releasing the transcripts of and exhibits from interviews of self-styled IRS "whistleblowers" who may be claiming that title in an attempt to evade their own misconduct was an obvious ploy to feed the misinformation campaign to harm our client, Hunter Biden, as a vehicle to attack his father.  It is no secret these interviews were orchestrated recitations of mischaracterized and incomplete "facts" by disgruntled agents who believed they knew better than the federal prosecutors who had all the evidence as they conducted their five-year investigation of Mr. Biden.

Let me be specific: (a) your release of material violated the spirit, if not the letter, of the tax laws and federal rules governing investigations; (b) your attempt to protect the IRS agents was a transparent effort to provide cover to those with a bias and an axe to grind so deep and sharp as to have allowed them to avoid answering for their own conduct under oath; and (c) you then choreographed the dissemination of incomplete half-truths, distortions, and totally unnecessary details about Mr. Biden.



June 30, 2023
Page 2

A.    <u>Improper Disclosures of Investigation and Tax Information</u>

Ironically, your counsel started each of the two interviews with a hollow recognition of the privacy of the very information you then irresponsibly released. "Majority Counsel 1" stated:

> Chairman Smith takes our tax privacy laws extremely seriously, and we have worked diligently to make sure that you can provide your disclosure to Congress in a legal manner . . . 26 U.S.C. Section 6103 makes tax return and return information confidential, subject to specific authorizations or exceptions in the statute. The statute anticipates and provides for whistleblowers like yourself to come forward and share information with Congress . . .

May 26, 2023, Interview Transcript of Gary A. Shapley, Jr. (Shapley Tr.) at 6. Nowhere in the provision is there language to allow for the wholesale release of untested information from a self-proclaimed whistleblower to the public in the manner you did. Disclosure to Congress is not the same as disclosure to *Fox News*. Indeed, Majority Counsel went on to state:

> The chairman considers this entire interview and the resulting transcript as protected confidential information under Section 6103. . . I'd like to remind the witness and everyone in the room that 26 U.S.C. Section 7213 makes it unlawful to make any disclosure of returns or return information not authorized by Section 6103. Unauthorized disclosure of such information can be a felony Punishable by fine or imprisonment. . .. we ask that you not speak about what we discuss in this interview to individuals not designated to receive such information.

*Id.* at 7. It seems that Majority Counsel should have read these provisions and warnings to you in addition to the witness.

There are myriad good reasons for tax return information to be kept private. One, this information can be complicated and nonsensical without a full understanding of the many things that go into listing something as income or expense or as taxable. Another, tax returns themselves can never explain how complex business entities like LLCs, partnerships, and overlapping joint ventures can operate so that a tax item can be understood.

In addition to Section 6103, Federal Rule of Criminal Procedure 6(e) prohibits disclosure of material obtained for a grand jury (e.g., from a subpoena or search warrant). There was no attempt by your witnesses or counsel to distinguish what information came from that process. Indeed, it is clear from what was said that various information *had such a source*. For example, Shapley Exhibits 8 and 9 appear to come from subpoenas to or a search warrant served on *third party record-keepers* that the agents admitted they did *not* provide the Committee. *See* Shapley Tr. at 14.

There are equally several reasons for grand jury secrecy under Rule 6(e). Aside from protecting against the release of one-sided information—the Supreme Court in *United States v. Williams* ruled that a prosecutor need not present exculpatory evidence to that body—grand jury



secrecy allows for the possibility, as occurred in the case of our client, for government attorneys to sift the evidence before making a charging decision on the basis of that one-sided presentation often made by case agents who have blinders to anything other than what they were told to obtain.

Protecting the information that you improperly released, as well as preventing leaks of information that occurred in the public appearances of Mr. Shapley, are so important that various courts have stated such disclosures are "more egregious" than the alleged crimes that agents, like Mr. Shapley, are supposed to investigate. *See, e.g.*, *United States v. Walters*, 910 F.3d 11, 32 (2d Cir. 2018) (concurring opinion). At least once before, in April 2023, Mr. Shapley used Congress to provide him cover to make other unauthorized disclosures when he wrote a letter claiming political interferences with his investigation which was given to the media likely before Members of Congress could open their copies. This week you did it again.

The timing of the agents' leaks and your subsequent decision to release their statements do not seem innocent—they came shortly after there was a public filing indicating the disposition of the five-year investigation of Mr. Biden. To any objective eye your actions were intended to improperly undermine the judicial proceedings that have been scheduled in the case. Your release of this selective set of false allegations was an attempt to score a headline in a news cycle—full facts be damned. We all know the adage: an allegation gets page one attention, while the explanation or exoneration never gets coverage at all or is buried on page 10. This letter is an attempt to make sure the response is found.

B.   <u>Accountability for Illegal Leaks in the Investigation</u>

As you and your staff know by now, the investigation in which Mr. Biden was a subject was plagued by leaks to the media about the investigation that violate various laws—tax laws and grand jury rules—as well as codes of conduct for law enforcement agents and attorneys. One of the most egregious leaks was an October 6, 2022, *Washington Post* article where sources that could only be from law enforcement told reporters that they had "sufficient evidence to charge" our client with tax and gun crimes. The article detailed what "agents" had gathered and what "agents" had determined. Devlin Barrett & Perry Stein, *Federal agents see chargeable tax, gun-purchase case against Hunter Biden*, WASH. POST (Oct. 6, 2022), [https://www.washingtonpost.com/national-security/2022/10/06/hunter-biden-tax-gun-charges/](https://www.washingtonpost.com/national-security/2022/10/06/hunter-biden-tax-gun-charges/). It is a tried-and-true tactic of aggrieved agents, who believe they know better than experienced prosecutors and disagree with those prosecutors timing or conclusions, to seek to influence an outcome of an investigation and pressure prosecutors to charge by leaking to the media. Happens all the time.

With this known practice and the publication of articles where the only source who would know what "agents" did and believed were the "agents," the Committee's conduct was, as the least, curious and were purposely designed to avoid getting to the bottom of who was dealing in illegal leaks. For example, the two agents who appeared on May 26 and June 1, 2023 were not sworn in. They were not told—as every government interviewer does—that providing false testimony could lead to criminal charges (e.g., 18 U.S.C. § 1001). While the subject of leaks came up once or twice, neither agent was asked "You obviously had disagreements with the prosecutors about the



evidence.  Before appearing here today, did you talk to or communicate in any way with anyone in the media?  Do you know which of your colleagues were talking to the media?  Did you ever provide any information of any kind about your work with anyone to the media? Have you been notified by any Justice Department, IRS, or Treasury office that you are the subject of any investigation concerning leaks? Were you removed from the investigation about which you complain here today because you were the subjects of such an investigation? Why would Treasury Department or Justice Department officials seek your emails and communications if not to determine whether you were the ones leaking to the media?"  And when one of the agents mentioned the outrageous October 6, 2023, leak indicating agents had concluded that charges against Mr. Biden should be brought, you allowed the agent to suggest unchallenged that the leak which was very prejudicial to Mr. Biden "might have come from" the defense.  June 1, 2023, Interview Transcript of Agent X (Agent X Tr.) at 58.  A ridiculous proposition.

Now that these shortcomings have been noticed, will the Committee follow up now and ask everyone who came or comes forward and claims the title of "whistleblower" to answer those questions?  In that regard, it was more than a little odd for Mr. Shapley to start his interview by declaring "[t]here is no reward for me becoming a whistleblower" and to conclude his interview by thanking the Committee and saying: "Just thanks for listening. My life's on the line here, so do what you can?"  Mr. Shapley may be reaping the "reward" from the cover you have given him considering the penalties for agents illegally leaking this type of information.  And how could Mr. Shapley's life "be on the line" (e.g., was he suggesting someone in the U.S. Attorney's Office in Delaware or elsewhere was threatening him physically? If so, wouldn't intimidation or threats to a federal agent be ripe for inquiry by the Committee?).  Perhaps, Mr. Shapley was referring to his status in some investigation of his *own conduct*, and his plea to have your Committee "do what you can" was to help him in that regard.

And, with respect to the integrity of your proceeding, there were dozens of occasions when a question was asked and then you allowed the agent to go "off the record" before an answer was recorded.  In many instances, this very unusual and constant "off the record" practice was to allow an answer to be better framed before "on the record" returned.  On June 1, 2023, you asked Agent X, "Have you ever been removed from an investigation prior to the one at issue here?"  Agent X then asked "Can we go off the record for a second."  Agent X Tr. at 47.  When you came back on the record, the question was left hanging.  On occasions when an agent seemed to be confused, you allowed his/her attorney to go off the record to apparently coach the correct answer.  For example, Agent X was asked about events in 2015 and started to answer, but Mr. Zerbe asked to go off the record, so he "could be sure."  *Id.* at 68.  This happened on other occasions as well.  *See, e.g.*, *id.* at 75 ("What were the three filings you were referring to?" followed by "Can we go off the record"); *id.* at 76 (after Agent X was asked about the access to an IRS system, Mr. Zerbe said, "Let me go off the record"); *id.* at 77 (when Agent X was asked about media articles including "Trump's tweets," a committee counsel went off the record); *id.* at 89 (when Agent X was asked "what the hazards of litigation were in particular?", he asked "Can we go off the record"); *id.* at 121 (when asked if Agent X has been excluded in other presentation by defense attorneys with prosecutors, Mr. Zerbe said "Let's go off the record"); *id.* at 151 (when Agent X was asked about his views of whether the U.S. Attorney could bring a case in the District of Columbia, Mr. Zerbe



said "Let me go off the record"). What real inquiry allows this practice of a witness speaking off the record to then have a better answer, and what occurred at each and every such off the record moment?

Your proceedings clearly adopted the agents' point of view that they were removed from the investigation because they, not the experienced prosecutors and law enforcement leaders, knew the right thing to do and were being punished for making their views known. But your conclusion is absurd under the slightest of scrutiny. With the entire media, Congress, Inspectors General, and the public watching, how could it be remotely possible that the supervisors and attorneys the agents named were retaliating against them? Isn't it more likely that this feigned retaliation theory has been spun because there is evidence that the wrongdoing in the case was committed by the agents turned "whistleblowers"? How could you believe the agents' stories at face value when it would make no sense for Republican-appointed and career prosecutors to turn away from any wrongdoing committed by Mr. Biden? Your report fails to note, for example, that the investigation you and your Republican colleagues have focused on began *during the Republican Trump Administration, supervised by two Republican Attorneys General, carried forward by a hold-over Republican U.S. Attorney, and pursued and reviewed by career and experienced attorneys.* What possible motive would any of these people have to ignore proper evidence and fail to bring proper charges if those were warranted? And, critically, what reason would Attorney General Garland—a former prosecutor, advisor to Justice Department officials, and federal judge with an impeccable reputation for honesty and integrity—have to lie about the authority that he provided the U.S. Attorney in Delaware? Moreover, why would the U.S. Attorney for the District of Columbia who recently confirmed that the U.S. Attorney for Delaware, as the Attorney General has stated, had complete authority to file any charges in D.C. have reason to also lie? The answers are "none." Believe long-standing, experienced, and highly reputed and Senate-confirmed public officials or believe biased IRS agents; you chose the latter.

If you wanted to find out if the agents who you have dubbed "whistleblowers" were not the sources of illegal leaks and others were responsible, you did everything possible to avoid that inquiry.

      C.    <u>The Dissemination of Half-Truths, Distortions, and Unnecessary Information</u>

Perhaps the most troubling of all the Committee's conduct was to allow the disclosure of one-sided, biased, incomplete, and distorted presentation of Mr. Biden's conduct and tax issues. In all law enforcement, there is a proper allocation of roles: agents, police, and investigators gather information, and prosecutors and lawyers evaluate the information for the requirements of bringing a charge and trying a case. It is supposed to be that way because each party to the process brings their own experience and ability and provides an overall view to create a proper outcome. Agents tend to seek out and see inculpatory information; prosecutors weigh that against both exculpatory data and the rules for bringing cases (e.g., evidence of willfulness, admissibility of information, statutes of limitations, venue, legal precedents, agency long-standing policies).



June 30, 2023
Page 6

Just as in the intelligence sphere raw data must be reviewed and evaluated, so too in criminal investigations the same process must occur.  In the end, these checks and balances are a critical part of our country's legal system, which insures the presumption of innocence.  What you did turns all that on its head.  You gave disgruntled agents free reign to present their views with no counterweight.  You knew ahead of time that the agents disagreed with the broader view that prosecutors bring to the process.  You knew there were certainly agents in the case who already had tried to improperly influence the decision-making through illegal leaks.  You knew that the prosecutors in the case—adhering to the law, rules, and ethical restraints—would not be able to respond.  You knew that, as in all matters, thorough cross-examination would be a tool to provide more reliable results.  Yet, for all you knew, you simply allowed those who had a clear bias to be the ones on whom you relied to provide the public with your revelations of "wrongdoing."

According to the agents, Mr. Biden committed clear chargeable tax offenses for almost every tax year from 2014–2019 and a set of IRS supervisors and Justice Department attorneys did not care.  On its face, this is a ridiculous premise.  This letter and certainly made-for-media proceedings you have been conducting and now with Chairmen Comer and Jordan you plan to continue, are not the forum to rebut each and every one of the agents' improper statements concerning Mr. Biden's taxes.  However, had you and your staff asked the agents thorough questions, they would have confirmed that the charges they sought require a taxpayer's intentional and willful violation, that there be a tax deficiency to address, that any tax error was not the result of mistakes people make all the time in compiling their taxes, that there was no excusable disability or other defense (e.g., an accountant's loss of records or an accountant's passing away).  These and so much more are how responsible prosecutors evaluate evidence before filing a charge.  Investigating agents do not do this; rather, prosecutors who have to write and justify charges and try them in court do.

You can readily know the slant that the agents put on the events with just a few examples of their willingness to bend facts to support their version of events:

- The agent indicating that some laptop was authentic (Shapley Tr. at 12) completely ignores the real issue, which is whether *data* that has now been accessed, copied, disseminated, stolen, and manipulated is authentic, including communications the agent was relying on.  Various media outlets have concluded data purporting to be from Mr. Biden is not authentic (and various Republican operatives have admitted they manipulated the hard drive contents).

- Continued reference to an unsolicited email purportedly sent from a former business associate, Tony Bobulinski, who coined the phrase "Ten held by H for the big guy." (Shapley Tr. at 18).  By now, a complete review of communications indicates 1) such a breakdown was never included in any agreement, 2) the concept was that of Bobulinski's, with whom Mr. Biden never did business and about whom any of his views were deemed by his business associate as being Bobulinski's "wishful thinking," and 3) finally, that our client never responded or acknowledged that communication, ever.

WINSTON
&STRAWN
LLP

- A gratuitous and intentionally misleading statement like "The years in question included foreign income . . . through a partnership with a convicted felon" (Shapley Tr. at 25), when the conviction he refers to was after the transaction involved and had *nothing* to do with that transaction.

- A conclusion with no support (Shapley Tr. at 97) that people he identified as employees of one of Mr. Biden's entities were "not working."

- Accepting the right-wing theory that some purported laptop was "abandoned" (Shapley Tr. at 104) when the agent had no basis to make that legal conclusion which is being contested in separate litigation.

- Stating the decisions of the prosecutors left Mr. Biden "tax free" (Shapley Tr. at 154) when the agents know well that years ago Mr. Biden paid all taxes due with interest and penalties, as often is the opportunity people have as a mitigating factor before any civil or criminal cases are filed.

The errors and omissions by the agents were magnified by the those you and your staff committed. These include making sure salacious and unnecessary details (e.g., references to prostitutes) were included in your release, allowing allegations of much earlier tax issues (not at all in the period the agents were assigned to investigate) to go unanswered, and even to willfully misrepresenting communications the agents claimed were authentic.

In one excerpt that has now gotten a great deal of media attention, Mr. Biden is alleged to have been sitting next to his father on July 30, 2017, when he allegedly sent a WhatsApp message, urging the completion of some business transaction. *See* Shapley Tr. at 14. The inference is that the referenced message was being sent to an official of CEFC (China Energy) to forward a false narrative about the Bidens' involvement in that company. The facts, which some media has now reported, are that President Biden and our client were *not* together that day, the company being referenced was *not* CEFC but Harvest Financial Group (with a person who also had the initial "Z"), and that *no* transaction actually occurred. More important, *your own actions* call into question the authenticity of that communication and your subsequent use of it. The agent only described one message, but you took that purported text and disseminated images of it on June 22 and June 24 in two Twitter postings.



June 30, 2023
Page 8





The screen-grab images you posted are not real and contain myriad of issues: both include a photo of Mr. Biden not from 2017 but from the White House Easter Eggroll in April 2022 (long after the purported message was sent); both images portray the message in a blue bubble, when WhatsApp messages are in green; one image super-imposed the Chinese flag for the contact ID, when surely that was not how a text or contact was kept; and one purports to be a screenshot with the ". . ." of someone composing a text (as in Apple's iMessage) when that does not happen on WhatsApp.  In short, the images you circulated online are *complete fakes.*  Many media articles confirm that data purported to have come from Mr. Biden's devices has been altered or manipulated.  You, or someone else, did that again.  All of the misstatements about this communication and your use of a false text are good examples of how providing one-sided, untested, and slanted information leads to improper conclusions.

Equally misleading are the agents' and your statements that involvement of the Justice Department Tax Division in advising on a tax investigation was unusual or indicated interference with the authority of the U.S. Attorney.  Quite to the contrary, *non*-involvement by the Tax Division would have been unusual.  There is rare exception to the involvement the Tax Division plays before any criminal case is brought based on tax issues.  That is for the very sound reason that millions



June 30, 2023
Page 9

of Americans every year have errors and omissions on tax filings, and there are so many different reasons for a person's or company's actions that a consistent approach to what is a civil case and a criminal case is needed. Countless investigations would have been misfiled as criminal cases were it not for the wiser review based on decades of experience of the Tax Division. Mr. Biden did not get any more favorable treatment to have these experts involved in his investigation, and excluding the Tax Division would have been an act worthy of agents' concern for disparate treatment—not the opposite.

Moreover, in tax cases especially, prosecutors reach out to defense counsel to understand the explanations and defenses a person or company may have to a tax filing error or omission. Indeed, unless a tax charge is an adjunct to some other set of criminal counts (i.e., organized crime, drug trafficking), meetings with defense counsel are routine. It is not unusual for case agents not to attend such meetings, and the protestation by the agents interviewed that they are always included is simply false. Once again, prosecuting attorneys meet with defense attorneys and make an evaluation based on a complete picture—a tax error or omission, the reason for it, evidence of willfulness, other mitigating factors (a person's health, or other disability) before ascribing a fraudulent intent that would turn a civil case into a misdemeanor or a misdemeanor into a felony.

Furthermore, various statements by the agents demonstrate either a misunderstanding by the agents or, worse, a purposeful attempt to create a false narrative. These include the red-herring issue of appointing the U.S. Attorney in Delaware to be a special counsel when for all intents and purposes the delegation to that U.S. Attorney was as great as that which a special counsel would receive; that prosecutors "let" statutes of limitations expire rather than deciding that a charge was not supported for a year in which a statute of limitations running was irrelevant; implying that the October 7, 2022, meeting in Delaware of prosecutors and agents was somehow the agents' doing when it is clear from the chronology that it was called the day after a destructive media leak by some agent, likely made with the intent to pressure some inappropriate decision in the investigation; that the agents knew better than the lawyers as to whether an attorney-client privilege review of material was required; or that a Tax Division memorandum recommended some type of charge(s) when the agent admits he never saw it.

Chairman Smith, it is easy when a committee does not operate with fairness and thoroughness and an adherence to rules and procedures to forward a false political narrative. You have done that, and it appears that you (joined now by other Republican chairs who have also been shown to shoot first—sometimes at their own feet—and aim second) will continue to do that. We can only hope that the specious methods you are using, some of which are laid out in this letter, will inform the public of the right way things should be done.

Sincerely,

Abbe David Lowell
*Counsel for Robert Hunter Biden*



June 30, 2023
Page 10

cc:    Richard Neal, Ranking Member, House Committee on Ways and Means